UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:09-364-KKC

EVERETT COCHRAN and
NICHOLAS TROTTER,                                                           PLAINTIFFS

v.                                        **OPINION AND ORDER**

NATIONAL PROCESSING COMPANY,                                      DEFENDANT

HANNA RESOURCE GROUP,                                                   MOVANT

\* \* \* \* \* \* \*

This matter is before the Court on the Motions to Quash filed by National Processing Company (DE 1) and Hanna Resources Group (DE 18). National and Hanna seek to quash a subpoena issued by this Court and served on Hanna. They argue that the documents requested in the subpoena are protected under the self-critical analysis privilege and that they are beyond the scope of discovery.

The underlying action is in the United States District Court for the Southern District of Texas. National is the Defendant in the Texas action. The Plaintiffs in that action are current and former National employees. They assert a claim against National under the Fair Labor Standards Act, alleging that National has improperly classified them as "exempt" employees under the Act and has, thus, improperly failed to pay them overtime.

Hanna, which is located in Lexington, Kentucky, is not a party to the Texas action. The subpoena requires Hanna to produce certain documents relating to work performed by Hanna for National regarding National's policies and procedures for paying overtime.

**I.     Transfer.**

The Plaintiffs move to transfer this motion to the Southern District of Texas, where the underlying action is pending. However, Rule 45(a)(2) provides that a subpoena for production or inspection must be issued by the court for the district where the production or inspection is to be made. Moreover, under the Federal Rules, any disputes that arise over the subpoena of a nonparty are decided by the court that issued the subpoena. *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.,* 444 F.3d 462, 468 (6th Cir.2006). *See* Fed. R. Civ. P. 45(c)(2)(B)(providing that, on a timely objection to the subpoena, the serving party may move the *issuing court* for a motion to compel); Fed. R. Civ. P. 45 (c)(3)(B)(issuing court may quash or modify subpoena). These rules are "designed to ensure that district courts remain firmly in control of those depositions and document productions involving nonparties located in their districts." *United States ex rel. Pogue*, 444 F.3d at 468.

The Plaintiffs provide no valid reason why the Court should deviate from the Federal Rules on this particular motion. They argue that the matter should be transferred because the dispute is between parties and not the subpoenaed party. However, as noted, the subpoenaed party – Hanna– has now joined in National's Motion to Quash. The Plaintiffs also argue that transfer is warranted because the Fifth Circuit does not recognize the "self-critical analysis" privilege. However, they cite no case law supporting transferring venue regarding a motion to quash in such instances.

Accordingly, the Plaintiffs' Motion to Transfer venue of this action will be denied.

**II.    Waiver by Hanna.**

The Plaintiffs next argue that Hanna has waived any objection to the subpoena because it did not timely object to it. The subpoena required Hanna to produce the documents by November 13,

2009. National filed its Motion to Quash on November 13, 2009. Hanna later filed a motion to join in National's motion to quash on February 8, 2010. The Rule requires that a motion to quash be filed "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B).

The Plaintiffs have not argued that National's Motion to Quash was untimely. It is true that "ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action." *Mann v. University of Cincinnati*, 1997 WL 280188 at *4 (6th Cir., May 27, 1997) (quoting Wright and Miller Federal Practice and Procedure § 2459). An exception to this general rule exists, however, where the party seeking to quash the subpoena "claims some personal right or privilege with regard to the documents sought." *Mann*, 1997 WL 280188 at *4.

National claims a personal privilege – the self-critical analysis privilege – with regard to the documents sought. Accordingly, regardless of whether Hanna's objection to the subpoena was timely, the Court will consider National's objection based on the self-critical analysis privilege.

National also claims that the documents sought are not relevant to the underlying claim. National does not have standing to assert this claim. However, the Court will consider Hanna's objections to the relevancy of the documents. Hanna has explained that, prior to obtaining counsel in this matter, it reached an agreement with Plaintiff's counsel that the Plaintiff would not seek to hold Hanna in contempt for failing to respond to the subpoena while National's Motion to Quash was pending. Accordingly, Hanna did not believe it had any obligation to respond to the subpoena while National's objection was pending.

The Court finds Hanna had good cause under the circumstances for failing to object to the subpoena until the Plaintiffs filed pleadings indicating that National's objection should not be

considered by the Court for lack of standing.

### III. Self-Critical Analysis Privilege.

National argues that the documents sought by the Plaintiffs are protected by the "self-critical analysis privilege."

As an initial matter, it is not clear that the privilege exists. As support for its argument that the Sixth Circuit has adopted the self-critical analysis privilege, the Plaintiffs cite *ASARCO, Inc. v. N.L.R.B.*, 805 F.2d 194 (6th Cir. 1986). In that case, the Sixth Circuit determined that the employer should not have to disclose self-critical reports prepared after serious accidents in order to improve safety and prevent similar mishaps. *Id*. at 199. The court determined that "[t]he practice of uninhibited self-critical analysis, which benefits both the union's and employer's substantial interest in increased worker safety and accident prevention, would undoubtedly be chilled by disclosure." *Id*. at 200.

However, that case involved a company's duty to turn over certain information in collective bargaining efforts with the employee's union. The Sixth Circuit specifically noted that items subject to discovery in litigation may not be subject to disclosure "in the collective bargaining context" and that any duty to disclose in that context must be evaluated in light of the rights and obligations created by the National Labor Relations Act. *Id*. at 199.

Even after *ASARCO*, district courts have found that the Sixth Circuit has never explicitly adopted the self-critical analysis privilege. *See United States v. Allison Engine Company, Inc.*, 196 F.R.D. 310, 313-14 (S.D. Ohio 2000); *Hickman v. Whirlpool Corp.*, 186 F.R.D. 362, 363 (N.D.Ohio 1999).

One district court has summarized the status of the privilege as follows:

4

> Furthermore, "no circuit court of appeals has explicitly recognized the self-critical analysis privilege." Johnson v. United Parcel Serv., Inc., 206 F.R.D. 686, 689-90 (M.D.Fla.2002). Most important, the validity of the self-critical analysis privilege is highly doubtful in light of the Supreme Court's decision *University of Pennsylvania v. EEOC*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), which declined to recognize a common law privilege against disclosure of confidential peer review materials.

*Granberry v. Jet Blue Airways*, 228 F.R.D. 647, 650 (N.D. Cal. 2005).

In *Allison Engine*, the court considered a claim of self-critical analysis privilege regarding internal audits of quality control for products supplied to the United States Navy. It applied a four-part test from *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249 (D.D.C.1970):

> (1) the information must result from self-critical analysis undertaken by the party seeking protection; (2) the public must have a strong interest in preserving the free flow of the type of information sought; (3) the information must be of the type whose flow would be curtailed if discovery were allowed; and (4) no documents should be accorded the privilege unless it was prepared with the expectation that it would be kept confidential.

*Allison Engine*, 196 F.R.D. at 312.

The court rejected the privilege in that case, noting that the privilege had rarely been applied and that its very rationale had been called into doubt. *Id*. at 313. *See also Wade v. Washington Metropolitan Area Transit Authority*, 2006 WL 890679 at * 5 (D.D.C. 2006)(the privilege is "rarely recognized.")

Even if the Sixth Circuit has or would adopt the privilege, National would not meet all four elements of the test set forth above.  National argues that the documents requested from Hanna relate to an evaluation that National hired Hanna to perform of National's classification of employees as exempt or non-exempt under the FLSA.  However, clearly not all the information contained in documents relating to the evaluation are necessarily protected by the privilege:

> The privilege is not absolute. It applies only to analysis or evaluation, not the facts on which evaluation is based. *See In re: Crazy Eddie Securities Litigation*, 792 F.Supp. 197, 205 (E.D.N.Y.1992). Courts have protected analytical or evaluative information but allowed discovery of factual information. *See Troupin*, 169 F.R.D. at 550. Under the privilege, parties are not required to reveal self-critical analyses, but must produce data or statistical information. *See Roberts v. National Detroit Corp.*, 87 F.R.D. 30, 32 (E.D.Mich.1980). Information, documents or records otherwise available from other sources are not immune from discovery. *See Shipes*, 154 F.R.D. at 307 (citing *Hollowell v. Jove*, 247 Ga. 678, 279 S.E.2d 430, 434 (1981)). Additionally, this is a qualified privilege and it can be overcome by showing extraordinary circumstances or special need. *See Reichhold Chem. Inc.*, 157 F.R.D. at 527. The privilege must be balanced against the opposing party's need for discovery. *See In re: Crazy Eddie Securities Litigation*, 792 F.Supp. at 205.

*Allison Engine*, 196 F.R.D. at 315.

The subpoena requests "all documents relating or pertaining to any review(s), audit(s), consulting or human resources management-related work performed by you for [National] regarding its policies or procedures concerning payment of overtime and/or classification of employees for overtime purposes," and "all communications between you and anyone with [National] related to its policies or procedures concerning payment of overtime and/or classification of employees for overtime purposes."

National has produced no evidence at all regarding the kinds of information contained in the documents requested , i.e., whether the information is "analysis" or "evaluation" or whether the information is "factual." Thus, the Court has no basis for finding any of the documents are privileged.

Further, the privilege is most often applied in cases involving public health or safety. *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 467 n.1 (C.A.D.C. 1994). In fact the privilege was "initially developed to promote public safety by encouraging businesses to voluntarily evaluate their safety procedures. *Morgan v. Union Pacific R. Co.*, 182 F.R.D. 261, 265 (N.D. Ill. 1998)(citing

*Bredice v. Doctors Hosp. Inc.*, 50 F.R.D. 249, 251 (D.D.C.1970)). "Because production of such documents 'would tend to hamper honest, candid self-evaluation geared toward the prevention of future accidents,' the doctrine evolved in order 'to prevent a 'chilling' effect on self-analysis and self-evaluation prepared for the purpose of protecting the public by instituting practices assuring safer operations.'" *Id*. (citing *Granger v. National R.R. Passenger Corp.*, 116 F.R.D. 507, 508-509 (E.D.Pa.1987)).

While the privilege has been applied in other settings, the "essence of the privilege is the value to the public of continuing the free flow of the type of information created by the analysis. Consequently, the inquiry focuses on the public policy requirement, that is, whether disclosure of material generated by a party's self-critical analysis will discourage or curtail future such studies." *Drayton v. Pilgrim's Pride Corp*., 2005 WL 2094903 at *2 (E.D. Pa. 2005).

The assessment at issue in this case involved National's classification of employees as exempt or non-exempt under the FLSA. National argues that it hired Hanna to develop and implement a compensation structure for the company including an evaluation of National's classification of employees as exempt or non-exempt under the FLSA. Disclosure of that assessment will not inhibit National from conducting further such assessments. In order to pay its employees, it obviously must continue to classify them as exempt or non-exempt. Thus, to the extent that the Hanna report contained any "evaluation" or "analysis," National must continue to engage in that analysis in order to pay its employees and avoid liability under the Act.

The privilege has been extended to employment cases to "protect business entities which are legally mandated to critically evaluate their hiring and personnel policies." *Morgan v. Union Pacific R. Co.*, 182 F.R.D. 261, 265 (N.D. Ill. 1998). However, the rationale for the privilege in employment

cases is different than it is for tort cases. While, "the justification for the privilege in tort cases is to promote public safety through voluntary and honest self analysis," *id.*, the privilege in employment cases is meant to "protect those businesses that are *required* to engage in critical self-evaluation from exposure to liability resulting from their mandatory investigations." *Id.* To the extent that Hanna's assessment contained any "evaluation" or "analysis," National has pointed to no law requiring such an evaluation.

For all these reasons, the Court hold that the Hanna documents are not protected under the self-critical analysis privilege.

**IV.     Relevance.**

National objects that the documents sought are not relevant to the Plaintiffs' action and Hanna has joined in that objection. National argues that the Plaintiffs are IT Support Technicians in Texas but that the subpoena seeks information about every National employee and that it seeks information beyond the classification of those employees under the FLSA.

The Plaintiffs argue that the documents are relevant to the "good faith" defense to the imposition of liquidated damages under the Act and to the extended statutory limitations period for "willful violations" of the Act. National has asserted the good faith defense and has denied any willful violations or purposes of extending the limitations period. The Plaintiffs argue that the defense "delves into the mind of the employer" and, thus, communications with Hanna regarding interpretation and application of the FLSA are relevant.

The Court agrees with the Plaintiffs that National's communications with Hanna regarding the FLSA classification of its employees for overtime purposes is relevant to National's "good faith" and "willfulness." The subpoena is confined to documents regarding "payment of overtime and/or

8

classification of employees for overtime purposes." Accordingly, the documents requested in the subpoena are discoverable.

### V. Conclusion.

For all these reasons, the Court hereby ORDERS as follows:

1) National's Motion to Quash (DE 1) is DENIED;

2) Plaintiffs' Motion for Leave to File Exhibits 5 and 8-13 under Seal (DE 8) is GRANTED and the Clerk of the Court is DIRECTED to file those exhibits under seal;

3) the Plaintiffs' Motion to Change Venue (DE 9) is DENIED;

4) Hanna's Motion to Quash (DE 18) is DENIED;

5) National's Motion for Leave to File Affidavit of Counsel (DE 24) is GRANTED and the Clerk of the Court is DIRECTED to file the tendered affidavit in the record.

Dated this 4th day of March, 2010.

Signed By:
*Karen K. Caldwell*
United States District Judge